[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/25/99
THOMAS K. KAHN
CLERK

No. 98-6541

D.C. Docket No. CR-96-118-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTOINE TERRELL ASKEW,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(October 25, 1999)**

Before TJOFLAT and DUBINA, Circuit Judges, and STORY*, District Judge.

---

*Honorable Richard W. Story, U.S. District Judge for the Northern District of Georgia, sitting by designation.

TJOFLAT, Circuit Judge:

Antoine Askew ("Askew") challenges his sentence for stealing firearms from a licensed firearm dealer in violation of 18 U.S.C. § 922(u) (1994). Specifically, Askew challenges the four offense level increase he received pursuant to U.S.S.G. § 2K2.1(b)(5) (1998) for transferring a firearm with reason to believe it would be used in another felony. Askew argues that the district court erred in applying the enhancement because there was insufficient evidence to prove he had reason to believe the firearms, once sold, would be used in another felony. Because the sentencing record does not establish the facts required to support this enhancement, we vacate the appellant's sentence and remand the case to the district court for resentencing.

## I.

On the night of April 4, 1995, Askew and several other men drove a car into the front door of Langley's Gun Shop, Inc. in Lanett, Alabama. The group stole fifty-four firearms from the shop and then fled. Included in the cache of stolen firearms were a Ruger 9 mm, a Firestar 9 mm, a Bryco .380 caliber, a Smith and Wesson 9 mm, a Glock .40 caliber, a Taurus 9 mm, and a Colt Cobra .357 magnum. None of the other stolen firearms are described in the record.

2

Askew and his cohorts were subsequently arrested, and a grand jury returned an indictment on June 5, 1996. On March 21, 1997, Askew pled guilty to the burglary. The probation officer's presentence investigation report (the "PSI") recommended the court sentence Askew at an offense level of 25. This calculation included a base offense level of fourteen pursuant to U.S.S.G. § 2K2.1(a)(6); an offense level increase of six because the burglary involved more than fifty firearms, see U.S.S.G. § 2K2.1(b)(1)(F); an offense level increase of two because the firearms were stolen, see U.S.S.G. § 2K2.1(b)(4); an increase of two offense levels for obstructing justice, see U.S.S.G. § 3C1.1; a four level increase for transferring firearms with reason to believe they would be used in another felony, see U.S.S.G. § 2K2.1(b)(5); and a decrease of three offense levels for accepting responsibility for his crime, see U.S.S.G. § 3E1.1.

Askew's sentencing hearing occurred on May 22, 1997. At the hearing, Askew objected to the PSI's recommended four level increase for transferring a firearm with reason to believe it would be used in another felony. His attorney conceded that "Mr. Askew was aware that the guns that were . . . stolen . . . were being stolen to be sold. But to whom he did not know, and he had never sold any of the guns himself, and he did not know any of the circumstances of the sale." Because Askew did not know any of the circumstances surrounding the sale of the

stolen firearms, his attorney argued, he had no reason to believe the weapons would be transferred to be used in another felony. To rebut Askew's claimed lack of knowledge, the Government offered the testimony of a deputy United States marshal to the effect that some of the stolen weapons were commonly associated with street crimes.[1] The deputy marshal, however, also testified that (1) he had never investigated a firearms trafficking or an illegal sale of firearms offense; (2) that "a lot of people hunt with long barrel .357, .44 magnum type revolvers;" and (3) that most shooting crimes do not involve stolen firearms. This testimony and the PSI were the only pieces of evidence the Government presented to support the section 2K2.1(b)(5) enhancement.

The district court found that because so many guns were stolen at one time, Askew had to have known that the guns were being resold for felonious purposes. Thus, the court overruled his objection to the enhancement and sentenced him to seventy-two months imprisonment with a three-year term of supervised release, and ordered restitution in the sum of $9,057.38. This appeal followed.[2]

---

[1] The deputy marshal only testified as to the seven guns described in the text. There was no mention in the PSI or in the sentencing hearing of the other 47 guns.

[2] While this appeal was pending, the Government moved the district court on May 22, 1998 to reduce Askew's sentence pursuant to Fed. R. Crim. P. 35(b) because of assistance he provided in a criminal investigation. On July 10, 1998, the court granted the Government's motion and reduced the term of Askew's prison sentence to 53 months. The parties agree that the court's action in granting the Government's motion and reducing Askew's sentence has not mooted this appeal. We agree. In other words, this appeal proceeds as if the motion had not been made and granted.

4

II.

We review the district court's factual findings on sentencing matters for clear error. See United States v. Miller, 166 F.3d 1153, 1155 (11th Cir. 1999). As we indicated in the opening paragraph of this opinion, this appeal presents one issue: whether the district court's finding, under the U.S.S.G. § 2K2.1(b)(5) enhancement provision, that Askew had reason to believe the stolen firearms would be sold for use in another felony is clearly erroneous.

The Government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement. See United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995); United States v. Shriver, 967 F.2d 572, 575 (11th Cir. 1992).[3] It is the district court's duty to ensure that the Government carries this burden by establishing a sufficient and reliable basis for its request for an enhancement. As we noted in Lawrence,

> the preponderance of the evidence standard . . . does not relieve the sentencing court of the duty of exercising the critical fact-finding function that has always been inherent in the sentencing process. . . . [The standard signifies] a recognition of the fact that if the probation officer and the prosecutor believe that the circumstances of the offense, the defendant's role in the offense, or other pertinent aggravating circumstances, merit a lengthier sentence, they must be prepared to establish that pertinent information by evidence adequate

---

[3] Similarly, a defendant bears the burden of proving, by a preponderance of the evidence, the factual basis for Guideline sections that would reduce the offense level. See United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989).

> to satisfy the judicial skepticism aroused by the lengthier sentence that the proffered information would require the district court to impose.

Lawrence, 47 F.3d at 1566-67 (quoting United States v. Wise, 976 F.2d 393, 402-03 (8th Cir. 1992)). Preponderance of the evidence is not a high standard of proof. It is not, however, a toothless standard either, and a district court may not abdicate its responsibility to ensure that the prosecution meets this standard before adding months or years onto a defendant's prison sentence.

U.S.S.G. § 2K2.1(b)(5) states: "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by [four] levels." In this case, Askew knew that the stolen guns were to be sold. He was not the seller, however, and he knew nothing of the circumstances surrounding the anticipated sale. In particular, he had no idea who the buyers might be.

There appear to be no cases in which a defendant standing in Askew's shoes, as a non-seller, had his sentence enhanced based on as little evidence as the Government presented in this case. In United States v. Gilmore, 60 F.3d 392, 394 (7th Cir. 1995), the only case we could locate dealing with a non-seller defendant, the Seventh Circuit affirmed the district court's conclusion that the government

satisfied the preponderance of the evidence standard as to the section 2K2.1(b)(5) enhancement. At sentencing, the district court accepted the defendant's position that the firearms involved in the offense had been either lost or stolen. See id. The court nonetheless found that the defendant had reason to believe that the guns would be used to commit felonies. See id at 394. The court made that finding on the basis of the government's evidence that Gilmore was a gang member, lived in an gang-ridden area, and was in the narcotics business. See id.

The other section 2K2.1(b)(5) enhancement cases we located all involved defendants who actually sold the firearms that ended up being used to commit other felonies. See, e.g., United States v. James, 172 F.3d 588, 590 (8th Cir. 1999); United States v. Leach, No. 99-1019  (2d Cir. July, 8, 1999) (unpublished); United States v. Martin, 78 F.3d 808, 810 (2d Cir. 1996); United States v. Messino, 55 F.3d 1241, 1244 (7th Cir. 1995); United States v. Cutler, 36 F.3d 406, 407 (4th Cir. 1994); United States v. Cummings, No. 93-2037 (6th Cir. Mar. 22, 1994) (unpublished); United States v. Romero, No. 93-1573,  (1st Cir. Nov. 22, 1993) (unpublished). In these cases, the defendants had personal contact with the transferees; thus, it was logical for the sentencing courts to infer a certain level of

knowledge about their buyers' intended uses.[4]  When a defendant is not the actual

seller and knows nothing about the circumstances surrounding the sales – as is the

case with Askew – the sentencing court cannot infer that the defendant had as

much knowledge about how the buyers would use the firearms as the actual seller

did.  Rather, the sentencing court needs something more.  The government must

present evidence that permits the sentencing court to infer that the non-seller knew

or had reason to believe the guns would be used to commit another felony.  See

generally United States v. Pantelakis, 58 F.3d 567, 568 (10th Cir. 1995) (holding

that an ambiguous statement in a PSI was insufficient to meet burden of proof

necessary to apply section 2K2.1(b)(5) sentencing enhancement); see also

---

[4] For instance, in each of the cases cited above, the Government introduced evidence showing why that particular defendant had "reason to believe" the transferee would use the firearm in a felony.  See James, 172 F.3d at 594 (defendant admitted to being a member of a gang, 43 of the firearms defendant sold were found at crime scenes, and testimony indicated that his buyers were gang members involved in drug trafficking); Leach, (evidence showed that defendant sold sawed-off shotguns, which could not be used for legitimate purposes, that payments were made in cash, and that defendant made an effort to conceal sales); Martin, 78 F.3d at 811-12 (evidence that 87 of the 93 guns sold were to three New York residents who had traveled to New Hampshire to purchase guns; all of the guns were low-grade, inexpensive, semi-automatic weapons; many of the weapons were easily concealable; defendant made false entries in his records to conceal the sales; and place of resale, New York City, was a high crime area); Messino, 55 F.3d at 1255-56 (evidence showed that defendant knew that buyer was connected to local crime figures, that defendant asked buyer to use the gun to shoot his ex-girlfriend, and that defendant scratched the serial numbers off the firearms he sold); Cutler, 36 F.3d at 407 (parties stipulated that majority of guns distributed were semi-automatic pistols, that defendant knew person selling guns kept company with "young persons who drove expensive cars in run-down urban sections of Baltimore," and that defendant had reason to believe the guns were being distributed to drug dealers); Cummings (evidence that defendant knew customers were criminals and that customers knew guns were stolen); Romero (evidence that weapons involved were inexpensive handguns unsuited for hunting or legitimate purposes, and that defendant helped deliver weapons to a high crime area).

Lawrence, 47 F.3d at 1567 (stating that the preponderance of the evidence standard "does not grant district courts a license to sentence a defendant in the absence of sufficient evidence").

The only pieces of circumstantial evidence the Government presented at Askew's sentencing hearing to show that he had "reason to believe" the firearms, once sold, would be used to commit another felony were the PSI and the testimony of a deputy United States marshal. The PSI's contribution to the Government's proof was a sentence which read, "[s]tatements made [by unidentified persons] to A.T.F. Agent Mike Dixon revealed that the defendants had knowledge, intent, or reasons to believe the firearms were to be sold on the street or bartered for drugs." The deputy, who had no experience investigating illegal firearms sales, opined that seven of the fifty-four guns that were stolen were the kinds that turn up at crime scenes, and that some of those guns were also used for hunting. In addition to these pieces of evidence, the Government had the benefit of defense counsel's stipulation that Askew knew the guns would be sold. In sum, the Government established that Askew and his companions stole a lot of guns, which the guns could be used for a variety of purposes, and that Askew knew the guns were going to be sold.

The Government's evidence yielded several <u>permissible</u> inferences. One is that Askew had reason to believe that the guns would be used to commit a felony; another is that Askew had reason to believe the guns would be sold to pawn shops, hunters, or ordinary law-abiding citizens. Askew may also have had no idea of the purpose for which the guns would eventually be used. Nothing in the record before the sentencing judge eliminated these "innocent" possibilities.[5] The evidence, therefore, was in equipoise. Accordingly, the Government failed to meet the burden of proof necessary to enhance Askew's base offense level under section 2K2.1(b)(5). Because the Government failed to meet its burden of proof, the district court's finding that Askew had reason to believe the guns would be used in another felony was clearly erroneous.

III.

For the foregoing reasons, the sentence of the district court is VACATED. The case is hereby REMANDED for resentencing consistent with this decision.

SO ORDERED.

---

[5] According to application note 18 to U.S.S.G. § 2K2.1(b)(5), to trigger the enhancement, the government must establish that the transferee's contemplated use of the stolen firearm constituted a felony other than illegal possession of or trafficking in firearms. U.S.S.G. § 2K2.1(b)(5) appl. n.18.